J-S57031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.C., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.C., MOTHER | : | No. 1044 EDA 2018 |

Appeal from the Decree March 19, 2018
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000174-2017

BEFORE:   PANELLA, J., PLATT, J.* and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 09, 2018**

K.C. (Mother) appeals from the decree entered March 19, 2018, in the Court of Common Pleas of Philadelphia County, which terminated involuntarily her parental rights to her minor son, K.C.C. (Child), born in December 2008.[1] We affirm.

Child came to the attention of the Philadelphia Department of Human Services (DHS) on March 17, 2016, after it received a general protective services report raising concerns regarding inadequate hygiene and housing. According to the report, Child's clothes appeared dirty and he and Mother had no stable home.  The report alleged that Child and Mother traveled from place to place each night, most recently sleeping on the floor of a barbershop.  On March 24, 2016, Child began living with his paternal aunt pursuant to a safety

---

* Retired Senior Judge assigned to the Superior Court.

[1] The family court entered a separate decree terminating the parental rights of Child's putative father, J.C.C. (Father).  Father did not appeal the termination of his parental rights.

plan. The juvenile court adjudicated Child dependent on April 29, 2016, and committed him to DHS custody. Child began living with a pre-adoptive foster family in June 2016. After this placement, Child revealed to his foster parents that Father had sexually abused him.

On February 14, 2017, DHS filed petitions to terminate involuntarily Mother's parental rights to Child. The family court conducted a hearing on March 19, 2018,[2] during which Lawrence Abel, Esquire, represented Mother as her privately retained counsel. Following the hearing, the court entered a decree terminating Mother's rights. Mother timely filed a *pro se* notice of appeal on April 2, 2018, along with a concise statement of errors complained

---

[2] The family court appointed Lee Kuhlmann, Esquire, to represent Child's legal interests during the termination proceedings. At the conclusion of the hearing, Attorney Kuhlmann stated that adoption was Child's preferred outcome. N.T., 3/19/2018, at 346. Attorney Kuhlmann did not file a brief or join another party's brief arguing in support of Child's legal interests on appeal, despite his continuing duty to Child. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 590 (Pa. Super. 2018) ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing.").

Additionally, we observe that Donella Shaffer, Esquire, of the Defender Association of Philadelphia's Child Advocacy Unit (DACAU), filed a brief in this Court describing herself as Child's counsel and arguing in support of termination. To the contrary, it is clear that DACAU served as Child's guardian *ad litem* and that Attorney Kuhlmann served as his legal interests counsel. *See* Decree of Termination of Parental Rights, 3/19/2018, at 1 (listing the attorneys at the termination hearing with a notation that Attorney Kuhlmann was Child's advocate and DACAU was Child's guardian *ad litem*); Family Court Opinion, 7/6/2018, at 1 (stating Child was represented by Attorney Kuhlmann as "Child Advocate" and Michael Hartman, Esquire of DACAU as guardian *ad litem*).

J-S57031-18

of on appeal.[3],[4]  The court appointed Lisa Visco, Esquire, to represent Mother

on appeal.  She has filed a brief in this Court on Mother's behalf.

Mother raises the following issues for our review.

1. Whether the [family] court erred and/or abused its discretion
by terminating the parental rights of Mother [] pursuant to 23 Pa.
C.S.[] [§] 2511(a)(1) where Mother presented evidence that she
tried to perform her parental duties.

2. Whether the [family] court erred and/or abused its discretion
by terminating the parental rights of Mother [] pursuant to 23 Pa.
C.S.[] [§] 2511(a)(2) where Mother presented evidence that she
has remedied her situation by maintaining housing, taking

_____

[3] The record does not reveal why Mother filed the notice of appeal and concise statement *pro se*.  Initially, during Child's dependency, Mother was represented by court-appointed counsel.  On November 27, 2017, prior to the termination hearing, Mother retained private counsel, and the order appointing her court-appointed counsel was vacated.  As noted *supra*, her privately-retained counsel represented her at the termination hearing.  Then, for unknown reasons, Mother filed her notice of appeal and concise statement *pro se* on April 2, 2018.  At no time between the conclusion of the termination hearing and the filing of the notice of appeal did Mother petition the family court for appointed counsel.  ***See In re A.R.***, 125 A.3d 420, 424 (Pa. Super. 2015) (holding that the appointment of counsel is not an automatic right; in order for counsel to be appointed on behalf of a parent pursuant to 23 Pa.C.S. § 2313(a.1), an indigent parent must petition the trial court for counsel).  However, at the same time Mother filed her notice of appeal, she also simultaneously filed a petition to proceed *in forma pauperis*, although the petition does not appear in the record.  The trial court granted the petition on April 2, 2018, and *sua sponte* appointed new counsel for Mother two weeks later on April 16, 2018.  Thus, we are satisfied that Mother was not deprived of her right to counsel.

[4] The family court opinion includes as an exhibit a concise statement that is somewhat longer than the concise statement contained in the certified record. However, the substance of Mother's alleged errors is essentially the same in both statements.

- 3 -

parenting classes and intensive drug treatment counselling and has the present capacity to care for [Child].

3. Whether the [family] court erred and/or abused its discretion by terminating the parental rights of Mother [] pursuant to 23 Pa. C.S.[] [§] 2511(a)(5) where evidence was provided to establish that [Child] was removed from the care of the Mother and Mother is now capable of caring for [Child].

4. Whether the [family] court erred and/or abused its discretion by terminating the parental rights of Mother [] pursuant to 23 Pa. C.S.[] [§] 2511(a)(8) where evidence was presented to show that Mother is now capable of caring for [Child] after she completed parenting classes, secured and maintained housing and completed her drug treatment program.

5. Whether the [family] court erred and/or abused its discretion by terminating the parental rights of Mother [] pursuant to 23 Pa. C.S.[] [§] 2511(b) where evidence was presented that established [Child] had a close bond with [] Mother and [Child] had lived with [] Mother for the most part of his life. Additionally, Mother maintained that bond by visiting with [Child] when she was permitted to visit him.

Mother's Brief at 7.[5]

We consider these claims mindful of our well-settled standard of review.

_____

[5] In a single sentence in her brief, Mother maintains that the family court erred or abused its discretion by changing Child's permanent placement goal to adoption. Mother's Brief at 12. Mother did not appeal any goal change order. Moreover, she did not preserve any such claim in her concise statement or statement of questions involved, and she included no substantive discussion of the goal change in her brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]ssues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Therefore, we do not consider this issue.

- 4 -

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child….

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the family court terminated Mother's parental rights to Child involuntarily pursuant to subsections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a) as well as subsection 2511(b) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's determination pursuant to subsections 2511(a)(2) and (b), which provide as follows.

- 5 -

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first consider if the family court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Here, the family court concluded that DHS presented clear and convincing evidence in support of its petition to terminate Mother's rights pursuant to subsection 2511(a)(2). The court reasoned that Mother failed to comply with her Single Case Plan (SCP) objectives. Family Court Opinion, 7/6/2018, at 2. It found that Mother did not attend court-ordered drug screens, did not complete court-ordered parenting classes, and lacked stable housing and employment. *Id.* at 2, 4-5. It further found that Mother engaged in inappropriate physical contact with Child during visits and condoned Father's sexual abuse of Child. *Id.* at 4-6.

Mother argues that she remedied the issues requiring Child's placement and is now able to provide him with appropriate parental care. Mother's Brief at 10, 16. She maintains that she complied substantially with her SCP goals, emphasizing that she visited with Child when permitted to do so, completed drug and alcohol treatment, attended mental health treatment, and obtained appropriate housing. *Id.* at 12, 16.

Our review of the record supports the family court's findings. During the hearing, DHS presented the testimony of Community Umbrella Agency

(CUA) case management supervisor, Lauren Kristich. Ms. Kristich testified that Mother's SCP objectives included completing housing and parenting programs at the Achieving Reunification Center (ARC), signing consents and releases, completing intensive outpatient treatment, completing Clinical Evaluation Unit assessments and random drug screens as court ordered, maintaining stable and appropriate housing, and maintaining employment. N.T., 3/19/2018, at 186-87.

With respect to Mother's progress toward completing these objectives, Ms. Kristich testified that Mother attended housing and parenting programs at ARC. *Id.* at 192. She completed the housing program, but ARC discharged her from the parenting program at least twice due to her noncompliance. *Id.* Mother went on to complete a parenting program at a different organization. *Id.* Ms. Kristich noted that the family court entered an order providing that DHS could sign consents for Child in Mother's place due to her resistance to consenting to services earlier in the case. *Id.* at 197-98.

Ms. Kristich further testified that Mother attended intensive outpatient treatment. *Id.* at 194. Mother attended group sessions rather than individual sessions, so the treatment program recommended that she attend individual therapy at the time of her discharge. *Id.* Mother attended individual therapy but did so inconsistently.[6] *Id.* at 194-95, 200. Mother also attended drug

---

[6] Mother's therapist, Edward Melvin, testified that she attended approximately five appointments since October 2017, missed "almost eight or ten," and

screens, although she missed at least one screen and sometimes appeared for screens on days when DHS had not asked her to appear. *Id.* at 195-97. None of Mother's drug screen results was positive during the time that Ms. Kristich was involved with the case.[7] *Id.* at 209.

With respect to housing, Ms. Kristich testified that Mother has had two different residences since Ms. Kristich began supervising this case in April 2017. *Id.* at 184, 188. Mother's current residence was unstable because she informed DHS that she would be moving out the following month. *Id.* at 188-89. Mother did not inform DHS where she would be moving. *Id.* at 190. Similarly, during the same period, Ms. Kristich noted that Mother maintained at least five different jobs. *Id.* Mother provided DHS with paystubs in the past, but not for her current job because she started just over a week before the hearing. *Id.* at 190-91.

Importantly, Ms. Kristich testified that DHS deemed Mother an indicated perpetrator of abuse against Child by omission. *Id.* at 203. This stemmed from Child's allegation that Father committed sexual abuse against him.[8] *Id.*

---

spoke to him on the phone approximately once per month. N.T., 3/19/2018, at 83, 101-02, 105.

[7] Mother tested positive for cocaine and marijuana at the start of the case, on June 30, 2016. DHS Exhibit 15 (Clinical Evaluation Unit Progress Report). The family court suspended the drug screens several months before the termination hearing. N.T., 3/19/2018, at 301.

[8] Although the family court heard conflicting evidence on this issue, it concluded that Mother was aware of Father's abuse and did not act to stop it.

at 201-02. In April 2017, the family court suspended Mother's visits with Child due to her inappropriate behaviors. *Id.* at 198, 208. CUA visitation coach and case aid, Zakiah Holmes, described the incident that precipitated the suspension as follows.

> Well, actually, that day I had one of the other coaches watch the visit while I had to go upstairs. So when I came back down, [Mother] was laid out on the sofa with [Child] with his hand on the small of her back [while Mother was] kissing him in the mouth.
>
> ***
>
> Well, when I came in the room and seen them, I said, [Mother], what are you doing. You can't do this. … Then she told me people have dirty minds if they think that way. It wasn't like really an issue to her that that's what they were doing.

*Id.* at 220-22.

Based on this evidence, the record supports the family court's finding that Mother is incapable of parenting Child, and that she cannot or will not remedy her parental incapacity pursuant to subsection 2511(a)(2). Mother failed to complete her SCP objectives. She inconsistently attended individual therapy and did not maintain stable housing or employment. Even more troubling, Mother failed to protect Child from Father's sexual abuse and engaged in inappropriate physical contact with Child, resulting in the

_____

The record supports this determination. Child's foster father, R.G., testified that he spoke to Child about the abuse, and that Child stated that Mother was present and "she knew what his dad made him do." N.T., 3/19/2018, at 62. Mr. Melvin testified that Mother discussed the abuse during therapy. He explained, "she said that they were together…. And something occurred where [Child] had to be punished and the father suggested he was going to punish him by making him kiss his penis." *Id.* at 88.

- 10 -

suspension of her visits. Returning Child to Mother's care would endanger his safety and risk exposing him to further abuse and instability. Because it is clear that Mother will not remedy this situation at any point in the foreseeable future, we discern no abuse of discretion.

Next, we assess whether the family court committed an abuse of discretion by terminating Mother's parental rights pursuant to subsection 2511(b). Mother waived this claim by failing to include it in her *pro se* concise statement of errors complained of on appeal. *See M.Z.T.M.W.*, 163 A.3d at 466. Even if she had not waived this claim, it would not entitle her to relief. The requisite analysis is as follows.

> [Subs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

Instantly, the family court concluded that terminating Mother's parental rights would best serve Child's needs and welfare. The court found credible the testimony presented by DHS that Child shares a bond with his foster parents and that termination will not cause him to suffer irreparable harm. Family Court Opinion, 7/6/2018, at 6. The court also emphasized Child's need for safety and security. *Id.*

Mother argues that Child lived with her for most of his life and has a strong bond with her. Mother's Brief at 12, 18. She insists that DHS should have provided her with therapeutic visits or parent/child interactive therapy in order to allow her visits with Child to resume. *Id.* at 18.

We again discern no abuse of discretion. As we discussed above, Mother failed to protect Child from Father's sexual abuse and engaged in inappropriate contact with Child even during supervised visits. Terminating Mother's parental rights serves Child's needs and welfare because it allows Child to feel safe and ensures Child will no longer be exposed to Mother's failure to respect boundaries in her physical contact with Child and failure to protect him from Father.

Moreover, while there are some positive aspects to the relationship between Child and Mother, the record supports the family court's finding that

severing this relationship would not cause Child to suffer irreparable harm. Ms. Holmes testified that Child was happy to see Mother during visits. N.T., 3/19/18, at 234. She explained that Child "would … be smiling. Hey, mom. You know, give him a hug and stuff, you know when he come in." *Id.* Nonetheless, she further testified that Child did not want to attend several visits with Mother in approximately January 2017 but that the CUA director forced him to go. *Id.* at 226. At the time of the termination hearing, Mother had not had contact with Child for almost a year.

In contrast, the record reflects that Child has a positive bond with his pre-adoptive foster family. CUA case manager, Angel Chancey, testified that Child asked recently if he could call his foster parents "dad and mom." *Id.* at 256. Child's foster father, R.G., confirmed that Child asked to call him "dad," and that Child "want[s] to stay with us." *Id.* at 52. He clarified that Child "say[s] he would like to stay with [Mother] or go with her, but he [doesn't] want to go and be in the same situations that he came from." *Id.* at 51. Thus, the record confirms that the family court did not abuse its discretion by concluding that terminating Mother's parental rights would best serve Child's needs and welfare.

Based on the foregoing, we conclude that the family court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child. Therefore, we affirm the court's March 19, 2018 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/9/18</u>